CARO, INC., APPELLANT, v. KEITH L. ROBY, APPELLEE.

342 N.W.2d 182

Filed December 16, 1983. No. 82-634.

William G. Line of Kerrigan, Line & Martin, for appellant.

David J. Nielson of McGrath, North, O'Malley & Kratz, P.C., for appellee.

BOSLAUGH, HASTINGS, SHANAHAN, and GRANT, JJ., and CAMBRIDGE, D.J.

GRANT, J.

Plaintiff-appellant, Caro, Inc., filed a petition against defendant-appellee Roby seeking a temporary and permanent injunction against Roby to restrain him from engaging in the funeral director business within a radius of 20 miles from Plattsmouth, Nebraska, for a period of 10 years.

Plaintiff's verified petition was based on an attached January 6, 1977, written agreement between the parties providing in part that Roby agreed "that at the time of his termination from the company's employ, regardless of the reason therefore [sic], that for a period of 10 years from the date of such termination he will not either as an owner, employee, partner, or a stockholder of [sic] any other manner, directly or indirectly engage in the business of funeral director, mortician, undertaker, or embalmer within a radius of 20 miles from Plattsmouth, Nebraska."

Based on that petition, on June 21, 1982, a temporary restraining order was signed granting the relief which plaintiff requested and setting a hearing on plaintiff's application for a temporary injunction on July 1, 1982.

On July 1, 1982, the trial court dissolved the restraining order and denied plaintiff's application for temporary injunction. This order was based on the evidence adduced at the hearing, including Roby's evidence that the January 6, 1977, contract had been entirely superseded by a new and different contract which deleted the noncompete agreement. On July 23 Roby filed his answer alleging in part that the agreement on which plaintiff sued had been superseded in its entirety by the terms of a later written agreement dated December 16, 1981, which agree-

ment contained no provisions concerning noncompeting, and which agreement specifically provided that it superseded all prior agreements between the parties.

On August 3 Roby filed a motion for summary judgment based on the pleadings and the evidence adduced at the July 1, 1982, hearing. The hearing on the summary judgment motion was set for August 13.

On August 12, 1982, Caro filed an amended petition. This petition was not verified. Leave of court was not obtained for filing.

On August 13, 1982, after the hearing on the motion for summary judgment, the trial court entered its order, which stated in part, "Plaintiff's Motion to Amend the Petition is overruled and Defendant's Motion for Summary Judgment is sustained."

Caro's motion for new trial was filed on August 24, 1982. On September 10, 1982, the motion for new trial was denied on the basis that it had not been timely filed as shown by the facts that the order sustaining Roby's summary judgment motion was entered on August 13 and Caro's motion was not filed until August 24, 1982.

Caro filed its notice of appeal and paid the statutory fee on September 13, 1982, a date within the statutory time for appeals as set in Neb. Rev. Stat. § 25-1912 (Reissue 1979), because September 12 was a Sunday. Neb. Rev. Stat. § 25-2221 (Reissue 1979). Caro assigns as error the actions of the trial court in (1) refusing to permit Caro to amend its petition to allege fraud, which refusal was an abuse of discretion; (2) granting summary judgment in favor of Roby without giving Caro a chance to establish fraud, which action was an abuse of discretion on the part of the trial court; (3) finding that the second contract superseded the earlier contract; (4) entering summary judgment in favor of Roby when there were genuine issues of fact present; and (5) entering

summary judgment which was contrary to the law and the facts.

We have considered each of the assignments of error, and we affirm the judgment of the trial court for the reasons hereinafter set out.

Appellee Roby presents an issue which must be disposed of before the merits of the case can be considered. Roby contends that in appeals in equity actions a motion for new trial must be timely filed to review the actions of the trial court with regard to amendment of the pleadings. Appellant Caro failed to file its motion for new trial within 10 days. Roby cites *Petersen v. Petersen*, 208 Neb. 1, 3, 301 N.W.2d 592, 594 (1981), where this court said, "There is no question that in appeals in equity actions a motion for new trial is required to review rulings of the trial court on the admission or exclusion of evidence *and on the amendment of pleadings*." (Emphasis supplied.) In this case, however, appellee is entitled to rely on the procedural provisions of Neb. Rev. Stat. § 25-1912.01(1) (Cum. Supp. 1982) (effective date of July 17, 1982), which provides, "A motion for a new trial shall not be a prerequisite to obtaining appellate review of any issue upon which the ruling of the trial court appears in the record." The order and judgment appealed from in this case was entered on August 13, 1982. Since Caro filed its notice of appeal and docket fee within 1 month of the judgment, this court has jurisdiction of the appeal.

Turning to the question as to whether the trial court should have permitted Caro to amend its petition by its filing the day before the hearing on Roby's motion for summary judgment, we are faced with an unnecessary problem. The act of permitting or refusing the filing of amended pleadings is one governed by the sound discretion of the trial court. Both parties agree to that. The problem arises, however, if the trial court is fettered in any way in the exercise of its discretion. In this case appellee has cited two cases to us dealing with the

proposition that an "excuse" must be offered by the amending party to explain the reason for failing to include in the original pleading the facts set out in the proposed amendatory pleading. One of these two cases was directly overruled, and the other distinguished, in *Louis Hoffman Co. v. Western Smelting & Refining Co.*, 150 Neb. 524, 34 N.W.2d 889 (1948). If these same cases were cited to the trial court and relied upon by the trial court, it would be possible that its discretion would not have been exercised properly. No facts are before us on that issue.

We must therefore examine with great care what the trial court did in refusing to permit the filing of the amended petition. It is obvious that Caro knew of the facts set out in the amended petition before it filed its original petition, since its president, Rod Rozanek, was a signatory to the contract which Roby asserts as a defense, and since the second contract was specifically referred to by Roby when he resigned on June 7, 1982. It is also clear that the filing of the amended petition was a last-minute act, done 1 day before the hearing on the summary judgment motion, and some 42 days after the hearing of July 1, at which there had been full disclosure of all the relevant documents, and 52 days after the filing of the original petition. Examination of the proposed amended petition shows conclusively that Caro did not properly raise any fraud issue. The amended petition sets out, with regard to the alleged fraud issue therein, the following: "7. Defendant has raised by motion for summary judgment the defense that on the 16th day of December, 1981 the parties entered into a new and different contract, a part of which provides that the new agreement shall supersede any and all previous agreements of any kind between the parties. A copy of said purported contract is marked Exhibit 'B' and is attached hereto and incorporated by reference herein. 8. Defendant procured the plaintiff's execution of Exhibit 'B' by fraud, deceit, and misrepresentatation [sic] in

that defendant insisted that plaintiff sign the purported contract without consultation with his lawyer when defendant was advised that plaintiff was immediately embarking on a trip and wanted the contract checked. Defendant further advised plaintiff that there were no changes in the contract previously existing between the parties, and the subject matter of this action, except as to compensation and defendants [sic] additional rights to participate in plaintiff's business. Defendant well knew that he intended to secure an abrogation of the non-competative [sic] clause by trickery and that plaintiff had not assented to any agreement eliminating the non-competition clause."

The facts alleged in the proposed amended petition as to the fraud issue were only two: defendant's insistence "that plaintiff sign the purported contract without consultation with his lawyer," and in defendant's advising plaintiff "that there were no changes in the contract previously existing between the parties . . . except as to compensation and defendants [sic] additional rights to participate in plaintiff's business."

The facts relevant to the signing of the second contract are not in dispute. The second contract, of December 16, 1981, was a 1-page typewritten document of 25 lines. It concluded with the sentence, immediately above Rozanek's signature, "This contract is the reduction to writing of previous oral understandings or conversations and shall supercede [sic] any and all previous agreememts [sic] of any kind between the parties." Plaintiff's president and sole stockholder, Rod Rozanek, was a man experienced in the funeral director business and was involved in eight such businesses, each located in a different Nebraska town. He had invited Roby to come to work for Caro in Plattsmouth at a time when Roby was employed in Ainsworth. After Roby had moved to Plattsmouth with his family and had worked some 2 months pursuant to an oral contract, Caro and its

president required that Roby sign the January 6, 1977, contract containing the 10-year noncompete clause, or be fired. On December 16, 1981, Roby made an appointment with Rozanek and drove to Fremont for the meeting. By Rozanek's own testimony he "glanced" at the document while he was conferring with Roby for 5 or 10 minutes. Rozanek signed the agreement.

When the brevity of the December 16, 1981, contract is considered together with the fact that Mr. Rozanek admitted signing the contract, the fact of Mr. Rozanek's long business experience, and the fact that the document was signed in Rozanek's place of business and witnessed by another of Rozanek's employees after a meeting of 5 or 10 minutes, the conclusion is inescapable that the facts as to fraud alleged in the amended petition fit precisely into the legal holdings of *Erftmier v. Eickhoff*, 210 Neb. 726, 732, 316 N.W.2d 754, 757 (1982), where this court stated, "Fraud is never presumed but must be established by the party alleging it by clear and satisfactory evidence. The general rule is that where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie."

Clearly, any exercise of the slightest prudence would have prevented any claim of possible deception. Based on the totality of the circumstances before the trial court, i.e., the late filing of the amended petition, the failure to originally plead facts known to Caro that might well have resulted in the refusal to issue the temporary restraining order, the facts known to all as a result of the hearing of July 1, the fact that Caro did not present even a claim of fraud in its testimony at the July 1 hearing, the fact that no affidavits alleging fraud were offered by Caro at the summary judgment hearing of August 13, the facts as to the December 16, 1981, contract itself, and the fact that the proposed amended petition did not set forth any proper allegations of

fraud, we determine that the trial court did not abuse its discretion in refusing to permit the filing of the amended petition.

A similar situation was presented to this court in *Ogallala Fertilizer Co. v. Salsbery*, 186 Neb. 537, 184 N.W.2d 729 (1971). In that case plaintiff contended that the trial court abused its discretion when it denied plaintiff the right to file a second amended petition. The court stated at 540-41, 184 N.W.2d at 731-32, "The amended petition proffered sought to change the cause of action to one for unjust enrichment. In this respect, it failed as it did not allege facts sufficient to constitute a cause of action. . . . Denial of the right to file an amended pleading not tending to promote the interests of justice is not an abuse of discretion." The trial court did not err in refusing to permit the filing of the amended petition.

Roby's motion for summary judgment, then, was properly submitted on the pleadings (the petition and the answer) and the evidence and testimony adduced at the July 1, 1982, hearing on Caro's motion for temporary injunction. So far as the record before us shows, neither party presented any other testimony or evidence at the summary judgment hearing.

We agree with the trial court that there was no genuine issue as to any material fact presented and that, as a matter of law, the second contract of December 16, 1981, was complete in itself and completely superseded and discharged the first contract of January 6, 1977. By its terms the second contract gave Roby an additional right to buy 50 percent of any new funeral business bought or built by Caro in Cass County, Nebraska; it substantially changed Roby's remuneration by raising his salary and giving him additional fringe benefits; and it concluded with words, set out above, superseding the original contract. 17A C.J.S. *Contracts* § 395 at 475-76 (1963) sets forth the rule with regard to subsequent inconsistent agreements as follows: "A contract com-

plete in itself will be conclusively presumed to supersede and discharge another one made prior thereto between the same parties concerning the same subject matter, where the terms of the latter are inconsistent with those of the former so that they cannot subsist together. However, deviations or changes in a contract do not necessarily abrogate it or imply its abandonment, and where it is claimed that by reason of inconsistency between the terms of the new agreement and those of the old the old one is discharged, the fact that such was the intention of the parties must clearly appear.''

This statement of law is specifically affirmed in *Hagerbaumer v. Hagerbaumer Brothers, Inc.*, 208 Neb. 613, 305 N.W.2d 4 (1981), and *In re Estate of Wise*, 144 Neb. 273, 13 N.W.2d 146 (1944).

Applying that rule to the instant case, it is clear, as a matter of law, that the second contract of December 1981 is complete in itself, that its terms are inconsistent with the terms of the earlier contract, and that the earlier and later contracts cannot subsist together. It is also clear, from the wording of the later contract itself, that the parties could not have intended anything other than the superseding of the earlier contract. Accordingly, it is conclusively presumed that the later contract supersedes the earlier.

The trial court was correct in holding that Roby was entitled to judgment as a matter of law.

AFFIRMED.